SCHULER-HAAS ELECTRIC CORP., Appellant, v AETNA CASUALTY & SURETY CO., Respondent. (Appeal No. 1.)

SCHULER-HAAS ELECTRIC CORP., Appellant, v AETNA CASUALTY & SURETY COMPANY, Respondent. (Appeal No. 2.)

SCHULER-HAAS ELECTRIC CORP., Respondent, v AETNA CASUALTY & SURETY COMPANY, Appellant. (Appeal No. 3.)

SCHULER-HAAS ELECTRIC COMPANY, Appellant, v AETNA CASUALTY & SURETY COMPANY, Respondent. (Appeal No. 4.)

Fourth Department, July 18, 1975

*James M. White* for Schuler-Haas Electric Corp., appellant and respondent.

*Johnson, Reif & Mullan, P. C. (George A. Schell* of counsel), for Aetna Casualty & Surety Co., respondent and appellant.

WITMER, J. In an action on a payment bond issued by defendant Aetna Casualty and Surety Co. (Aetna) on behalf of

Logic Construction, Inc., general contractor on a Third Ward Urban Renewal Project in Rochester owned by I.C. Housing Development Fund Company, Inc. for the construction of a high-rise apartment building and 104 town house units, Special Term made three orders denying two motions by plaintiff and one by defendant for summary judgment and an order denying a motion to resettle the first of such orders. Plaintiff appeals from three of those orders and defendant appeals from the other one.

The general contractor entered into a contract with subcontractor Logic Builders, Inc. to construct the high-rise apartment building and another contract with subcontractor I.C.H. Contractors, Inc. to construct the 104 town house units. Those two subcontractors entered into contracts with plaintiff to perform the electrical work on both jobs. Not only did defendant Aetna issue the *payment bond* above mentioned but it also executed a *performance bond* in behalf of the general contractor for the benefit of the owner.

In its complaint in this action on the payment bond plaintiff alleges the above contracts and defendant's execution of the payment bond for the benefit of all suppliers and subcontractors on the jobs; that it has performed its work on the projects in accordance with its contracts; and that a sum in excess of $169,000 plus interest is due and owing to it therefor. Defendant Aetna answered, acknowledging plaintiff's status as a subcontractor and alleging that by the terms of the general contract, subcontracts and its performance bond, its principal is not liable to plaintiff until the principal receives payment from the owner, that such payment has not been made, and hence Aetna is not obligated to plaintiff. In the course of this litigation some payments have been made to plaintiff on its claim, and it has been stipulated that plaintiff has satisfactorily performed on its contracts and is now entitled to payment for work which it has completed on the projects in an amount in excess of $88,500. The issue presented on this appeal is whether, under the terms of the several contracts and Aetna's payment and performance bonds, plaintiff is entitled to summary judgment, requiring Aetna to pay to it the above amount admittedly owing to plaintiff under the contracts.

At the top of Aetna's *payment bond* there is a statement in parentheses that it is issued simultaneously with a *performance bond* which it has executed to secure the owner for the completion of the contract by the general contractor. It is then

provided in the payment bond, "that every claimant * * * who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond * * * for such sum or sums as may be justly due claimant".

In its contracts with subcontractors Logic Builders, Inc. and I.C.H. Contractors, Inc. plaintiff agreed that its rights are subject to the terms of the contract between the owner and the general contractor, and that its contractors must pay plaintiff, "when full payment for this subcontract ·work is received [by the general contractor] from the Owner". By the terms of the general contract the general contractor agreed to pay unpaid obligations on the project within 15 days after it receives its final payment from the owner. In Aetna's *performance bond* it is provided that Aetna "shall not be liable *under this Bond* to the Obligees [the owner] * * * unless the said Obligees * * * shall make payments to the Principal [general contractor] strictly in accordance with the terms of said Contract as to payments" (emphasis added).

Aetna contends that all of the contracts and both bonds must be read together and that it was the intent of the parties that the general contractor and its immediate subcontractors, and hence Aetna, would have no liability for the claims of suppliers or job workmen (such as plaintiff) unless and until the claims have been submitted and the owner has paid the general contractor therefor. Aetna submitted several affidavits on the motion at Special Term to support its contention, and because thereof Special Term determined that a question of facts exists as to the intention of the parties and meaning of the several contracts and bonds, and so denied summary judgment to either party.

Where contracts are in writing the rights of the parties should be determined by the plain meaning of the language used, if possible. Where the meaning is not clearly expressed, however, " 'The ascertainment of the substantial intent of the parties is the fundamental rule in the construction' " of the documents *(Madawick Contr. Co. v Travelers Ins. Co.,* 307 NY 111, 119). In some cases that intention may be determined by the court as a matter of law on the documents themselves based upon the character of the transaction, and in others it may be necessary to resort to extrinsic evidence (see 4 Willi-

ston, Contracts [3d ed], § 616; 10 NY Jur, Contracts, §§ 189–190).

There is no doubt that if the parties clearly expressed an intention that no subcontractor (as the plaintiff) should have a right to be paid or to sue on the payment bond until all questions relating to the contracts have been resolved and the owner has made his final payment due under the contract to the general contractor, such agreement would be binding, and it would constitute a condition precedent to plaintiff's action against the surety. Questions presented to us on these appeals are whether the documents in this case show such intent, or to the contrary, whether it may be held as a matter of law that the parties did not mean to create a condition precedent to payment.

No New York appellate case has been brought to our attention bearing directly on this issue, but a number of courts in other jurisdictions have dealt with this question. These courts have recognized that as a practical matter the suppliers and small contractors on large construction projects need reasonably prompt payment for their work and materials in order for them to remain solvent and stay in business. In the absence of a clear expression in the contract papers that the credit risk of the general contractor and the delay in payment frequently attending on construction projects are meant to be shifted to such suppliers and subcontractors, the contract instruments should not be construed as intending such assumption (*Dyer Co. v Bishop Int. Eng. Co.,* 303 F2d 655 [6th Cir., 1962]). Indeed, it is presumed that the parties did not intend that payment of the small subcontractors should await the determination of an extended legal dispute between the owner and general contractor over an issue not concerning him or his work (*Eastern Heavy Constructors v Fox,* 231 Md 15, 19–20 [1963]).

By the same token, in this case, the mere reference at the top of the payment bond to the fact that it is issued simultaneously with the execution of a performance bond is insufficient to demonstrate an intent that all of the conditions of the performance bond are incorporated into the payment bond. The two bonds, of course, serve different purposes, and the terms of the performance bond will not be read to limit the rights of the supplier and workmen in the absence of a clear expression to such effect (*Byler v Great Amer. Ins. Co.,* 395 F2d 273, 276 [10th Cir, 1968]). The payment bond expressly

authorizes suit on it by a claimant who has not been paid before the expiration of 90 days after the work was performed. It has been stipulated herein that plaintiff qualifies as a proper claimant. Not only does the payment bond fail to provide that rights under it are subject to the limitations contained in the performance bond, but, as above noted, the latter provides that Aetna, "shall not be liable under this Bond", until the general contractor has been paid by the owner. This provision constitutes Aetna's recognition of its separate responsibility on such bond vis-à-vis its responsibility on the payment bond.

Courts in other jurisdictions which have construed similar provisions in payment bonds have held that the clauses in the several contracts for the project which provide that the contractor shall pay his subcontractors within a stated number of days after the contractor has received payment from the owner, merely *fix the time* when payment is due and do not establish a condition precedent to payment *(Howard-Green Elec. Co. v Chaney & James Constr. Co.,* 12 NC App 63 [1971]; *Wolfe Co. v Baltimore Contrs.,* 355 Mass 361 [1969]; *Fishman Constr. Co. v Hansen,* 238 Md 418 [1965]; *Dyer Co. v Bishop Int. Eng. Co.,* 303 F2d 655, *supra; Moore v Continental Cas. Co.,* 366 F Supp 954 [WD Okla, 1973]).

In *Howard-Green Elec. Co. (supra,* p 68) the court interpreted the very same clause involved in the case at bar and stated, "No question is raised but that plaintiff is a claimant within the meaning of the bond. Neither payment by the Owner to the general contractor, nor completion of work of other subcontractors, are among conditions imposed by the bond. By executing the bond, defendant-appellants have themselves recognized the 90-day period as a reasonable time after which payment to plaintiff becomes due."

In *Wolfe (supra,* pp 365–366) the court said, "We interpret art. II (a) merely as setting the time of payment and not as creating a condition precedent to payment. In the absence of a clear provision that payment to the subcontractor is to be directly contingent upon the receipt by the general contractor of payment from the owner, such a provision should be viewed only as postponing payment by the general contractor for a reasonable time after requisition (and completion of the subcontractor's work mentioned in the requisition) so as to afford the general contractor an opportunity to obtain funds from the owner."

In *Dyer* the court, at page 659, stated that, "the crucial issue in the case [is] * * * whether * * * paragraph 3 of the subcontract is to be construed as a conditional promise to pay, enforceable only when and if the condition precedent has taken place, which in the present case has not occurred, or * * * it is to be construed as an unconditional promise to pay with the time of payment being postponed until the happening of a certain event, or for a reasonable period of time"; and at page 661 the court stated, "[i]t seems clear to us under the facts of this case that it was the intention of the parties that the subcontractor would be paid by the general contractor for the labor and materials put into the project * * *. In our opinion, paragraph 3 of the subcontract is a reasonable provision designed to postpone payment for a reasonable period of time after the work was completed, during which the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor. [Citation omitted.] To construe it as requiring the subcontractor to wait to be paid for an indefinite period of time until the general contractor has been paid by the owner, which may never occur, is to give to it an unreasonable construction which the parties did not intend at the time the subcontract was entered into".

In some cases where the contract has not specified the time of payment the courts have held that payment is due to plaintiff within a reasonable time after completion of the work and demand for payment *(Byler v Great Amer. Ins. Co.,* 395 F2d 273, *supra).* The question of reasonable time for payment is not present in the case at bar because the bond here provides for payment after the work has been completed for 90 days, and it is stipulated that those conditions have been met (see *Howard-Green Elec. Co. v Chaney & James Constr. Co.,* 12 NC App 63, *supra*).

We conclude, therefore, that no question of fact exists in this case with respect to the interpretation of the payment bond and the documents executed therewith, and that under a reasonable construction of such bond the plaintiff is entitled to summary judgment for the amount, in excess of $88,500, which the parties have stipulated plaintiff has earned and for which the subcontractors are indebted to it.

The order denying plaintiff's motion for such partial summary judgment should, therefore, be reversed and the motion granted. The order denying defendant's motion for summary

judgment against plaintiff should be affirmed. The appeals from the other two orders should be dismissed as moot.

MARSH, P. J., MOULE, MAHONEY and GOLDMAN, JJ., concur.

In Appeal Nos. 1 and 2. Appeals unanimously dismissed as moot.

In Appeal No. 3. Order unanimously affirmed.

In Appeal No. 4. Order unanimously reversed on the law and motion for partial summary judgment granted with costs to appellant.