**F.W. SIMS, INC., Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, Defendant.**

**No. CV 90–3659.**

United States District Court, E.D. New York.

April 2, 1992.

Steven G. Rubin, Mineola, N.Y., for plaintiff.

McDonough, Marcus, Cohn & Tretter, P.C. by K. Richard Marcus, New York City, for defendant.

MEMORANDUM AND ORDER

WEXLER, District Judge.

F.W. Sims, Inc. ("Sims"), a sub-contractor who worked on the construction of the Wind Watch Hotel in Islip, New York, brings this action against Federal Insurance Company ("Federal"), seeking to collect $118,101.93 on a labor and material bond issued by Federal which guarantees payment to those who furnished labor and materials under contract to E.W. Howell Co., Inc. ("Howell"), the general contractor for the aforementioned hotel construction project. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Now before the Court is plaintiff's motion for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is denied.

## I. BACKGROUND

According to plaintiff's complaint, on or about September 1, 1987, Pacific Ventures, Inc. ("Pacific") entered into a contract with Howell to construct a 362 room hotel at Islip, New York. On December 22, 1987, Pacific assigned the hotel contract to One Colony Hill Associates ("Colony"). On January 19, 1988, Howell, as principal, and Federal, as surety, executed and posted a labor and material bond in the penal sum of $26,378,649, guaranteeing payment to subcontractors who furnish labor, material, or both on the hotel construction project. On or about March 7, 1988, Howell and Sims entered into a subcontract whereby Sims was to furnish work and materials on the project for a sum of approximately $3,000,-000, of which approximately $2,900,000 has already been paid.

Federal notes that Sims reviewed its subcontract with Howell and negotiated certain changes in Article 5 regarding the percentage of Howell's retainage, but did not object to the "pay when paid" clause cited below.

PROGRESS PAYMENTS

... Contractor's responsibility for payments to subcontractor is expressly contingent upon Owner's payment to Contractor.

Article 6 of the subcontract between Sims and Howell states in relevant part:
FINAL PAYMENT

[T]he final payment shall be made within forty days after the completion of the work covered by this contract and acceptance thereof by the Owner or Architect and Contractor, upon the condition that the final payment is actually received by contractor from owner....

On or about June 30, 1990, Sims submitted its bill in the sum of $118,101.93 for amounts due. Federal does not assert that Sims' work is in any way defective. However, due to the fact that Colony ceased making payments to Howell on the main contract, Howell has not paid Sims any of the money still due on the subcontract. Moreover, since February 20, 1991, Colony has been in involuntary bankruptcy.

Federal sets forth three affirmative defenses: (1) Article 5 of the subcontract provides that the "Contractor's responsibility for payments to the subcontractor is expressly contingent upon Owner's payment to Contractor"; (2) Article 6 of the subcontract between Sims and Howell provides that "the final payment shall be made within forty days after the completion of the work covered by this contract ... upon the condition that final payment is actually received by Contractor from Owner"; (3) Federal was discharged when the bonded contract was materially altered by reason of an assignment of the contract without the consent of the defendant.

Finally, Sims alleges that on or about July 2, 1990, Howell entered into a Modification Agreement with Colony in which Howell agreed to wait until September 1, 1990 before seeking further payments from Colony on the underlying contract. Sims alleges that this Modification Agreement was made without notice to Sims and in derogation of its rights and therefore invalidates any "pay when paid" clauses in the subcontract.

## II. DISCUSSION

Federal's duty as a surety to make payments on its bond is contingent upon the duty of its principal, Howell, to make such payments. *Lamparter Acoustical Prods. Ltd. v. Maryland Cas. Co.*, 64 A.D.2d 693, 407 N.Y.S.2d 579, 580 (2d Dep't 1978). It is not disputed that Howell has not received the final payment from Colony, which is now in bankruptcy. Therefore, the key issue to be resolved in this motion for summary judgment is whether the "pay when paid" clauses in Article 5 and Article 6 of the subcontract between Howell and Sims, as a matter of law, shift the risk of non-payment from Howell to Sims, when the sole reason for non-payment is that Howell has not received payments from the Owner.

In *Schuler–Haas Elec. Corp. v. Aetna Cas. & Sur. Co.*, 49 A.D.2d 60, 371 N.Y.S.2d 207 (4th Dep't 1975), *aff'd*, 40 N.Y.2d 883, 389 N.Y.S.2d 348, 357 N.E.2d 1003 (Ct.App.1976), the appellate division states:

> There is no doubt that if the parties clearly expressed an intention that no subcontractor (as the plaintiff) should have a right to be paid or to sue on the payment bond until all questions relating to the contracts have been resolved and the owner has made his final payment due under the contract to the general contractor, such agreement would be binding, and it would constitute a condition precedent to plaintiff's action against the surety....
>
> ... In the absence of a clear expression in the contract papers that the credit risk of the general contractor and the delay in payment frequently attending on construction projects are meant to be shifted to such suppliers and subcontractors, the contract instruments should not be construed as intending such assumption. Indeed, it is presumed that the parties did not intend that payment of the small subcontractors should await the determination of an extended legal dispute between the owner and general contractor over an issue not concerning him or his work.

*Id.* 371 N.Y.S.2d at 210. (citations omitted). In *Schuler–Haas*, the court determined that the contract did not clearly express the parties' intention that the subcontractor did not have a right to be paid or to sue on the payment bond until all questions relating to the general contract had been resolved. Consequently, summary judgment was granted for the subcontractor plaintiff. *See also Action Interiors, Inc. v. Component Assembly Systems, Inc.*, 144 A.D.2d 606, 535 N.Y.S.2d 55 (2d Dep't 1988); *Grossman Steel and Aluminum Corp. v. Samson Window Corp.*, 433 N.Y.S.2d 31 (2d Dep't 1980), *aff'd*, 54 N.Y.2d 653, 442 N.Y.S.2d 769, 426 N.E.2d 176 (Ct.App.1981).

However, in *Riverside Iron Works v. Ins. Co. of North America*, 156 A.D.2d 919, 549 N.Y.S.2d 877 (3d Dep't 1989), recovery was denied where the payment clause stated:

> All payments called for in this Subcontract by [Contractor] to Subcontractor ... are contingent upon ... the conditions precedent of prior receipt by [Contractor] of payment from Owner.... Subcontractor understands, acknowledges, and agrees to expressly accept the risk that it will not be paid for its Work performed ... to the extent [Contractor] is not fully paid by Owner for any reason whatsoever, whether or not such reasons are related to subcontractor's work.

*Id.* 549 N.Y.S.2d at 878. *See also C.F. Mentzinger's Son Inc. v. Federal Ins. Co.*, Sup.Ct. Nassau Cty. (Index No. 27639/90) (construing the identical "pay when paid" clauses as are found in the instant case, but with allegations [not found in this case] that the contractor's non-payment was due, at least in part, to deficiencies in the subcontractor's work); *North Berry Structures Co., Inc. & SAF Lasala Corp. v. Fed. Ins. Co., et al.*, Sup.Ct., Nassau Cty. (Index No. 17175/90) (same).

This Court finds that the "pay when paid" clauses in the Howell/Sims subcontract do not express the parties' intentions to shift to the subcontractor the risk of the Owner's failure to pay the general contractor when the reason for the non-payment is unrelated to the subcontractor's work as clearly and unambiguously as does the "pay when paid" clause in *Riverside Iron Works*. Whether the "pay when paid" clauses at issue in this case are nevertheless sufficiently clear to shift that risk is a close question. Consequently, "intent becomes an issue of fact and summary judgment is inappropriate." *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir.1990); *see Record Club of America, Inc. v. United Artists Records, Inc.*, 890 F.2d 1264, 1271–72 (2d Cir.1989).[1]

---

1. Federal's third affirmative defense, that it was discharged from its obligation under the payment bond because Pacific assigned the hotel contract to Colony, is clearly without merit. First, the assignment was made on December 22, 1987, a month before Federal's bond went

Finally, Sims argues that even if the "pay when paid" clauses are valid, Howell, by entering into a Modification Agreement with Colony Hill on or about July 2, 1990 for Howell's own benefit and without notification to Sims, invalidated those clauses. *Cf. Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.*, 30 N.Y.2d 34, 330 N.Y.S.2d 329, 333, 281 N.E.2d 142 (Ct.App.) (every contract carries with it an implied covenant of good faith), *cert. denied*, 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972). Howell responds that *if* the Modification Agreement is valid, it was made in good faith and inured to the benefit of plaintiff. In any event, Colony contends that the Modification Agreement was never consummated because its offer expired prior to Howell's acceptance. This creates a question of fact which cannot be resolved on a motion for summary judgment.

### III. CONCLUSION

For the reasons stated above, Sims' motion for summary judgment is denied.

SO ORDERED.

into effect. Moreover, even were the assignment not made prior to the issuance of the bond, the mere assignment of the contract by the owner would not operate to discharge the surety where, as here, the surety's obligation is for the benefit of the subcontractors. *See Area Masonry, Ltd. v. Dormitory Authority*, 64 A.D.2d 810, 407 N.Y.S.2d 279, 280–81 (4th Dep't 1978). Indeed, Federal does not argue the merit of this defense in its Memorandum of Law.