[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
INTRODUCTION
This action arose out of the construction of the Waterbury Water Treatment Plant for the defendant City of Waterbury (City). The defendant EI Constructors, Inc. CT Page 1703 (EI) was the general contractor, and the plaintiff (BAC) was a subcontractor of EI. The defendant Aetna Insurance Company (Aetna) provided a surety bond.
BAC's suit against EI is based on its claims that EI breached its contractual promise to perform its obligations, and to pay BAC. A default was entered against EI on November 15, 1993 for its failure to appear and defend, thereby making it liable to the plaintiff for whatever damages the plaintiff might prove in its hearing in damages trial, which was part of this trial against the City and Aetna. BAC seeks to recover against Aetna under the bond Aetna posted for labor and materials (including costs, expenses and lost profits) provided on the project.
The plaintiff's claims against the City are that the City converted its equipment and materials, and negligently misrepresented site conditions.
II. BAC v. EI
 1. LIABILITY
On January 11, 1983, EI and the City entered into Contract 82-11 for construction of the Waterbury Water Treatment Plant. Pursuant to this contract, EI as principal, and Aetna as surety, posted a bond. On December 30, 1982, the plaintiff contracted with EI to perform certain work under Contract 82-11 for $440,000.
In this lawsuit against EI, Aetna and the City, the plaintiff claims that EI failed to perform its obligations under Contract 82-11 and under the subcontract with the plaintiff. On November 15, 1993, this court defaulted EI for failure to appear and defend the suit. The entry of this default determined the liability issues in the case in favor of the plaintiff and the trial was a hearing in damages with respect to EI. EI did not appear at the trial at all.
 The entry of a default constitutes an admission by the defendant of the truth of the facts alleged in the complaint. CT Page 1704
DeBlasio v. Aetna Life and Casualty Co., 186 Conn. 398,400 (1982).
 The plaintiff must still prove [at a hearing in damages] how much of the judgment prayed for in the complaint he is entitled to receive.
United National Indemnity Co. v. Zullo, 143 Conn. 124,130 (1956).
2. DAMAGES
a. Count I. — Unmade Progress Payments
EI owes the plaintiff for unmade progress payments as shown in various invoices. The work was done and invoiced in accord with the contract as follows:
1. for period through 7/20/84 — $42,020.93;
2. for period 7/20/84 to 8/24/84 — $38,500.57;
3. for period from 8/25/84 to 9/14/84 — $23,471.08.
In addition to these amounts, the plaintiff is entitled to interest under Section 37-3a of the Conn. Gen. Stat. because the detention of the money was wrongful under the circumstances. These amounts were clearly owed right from the time of the invoices were presented. The court will more fully discuss the law concerning prejudgment interest later in this decision. Since the claims rest on a breach of contract, 10% statutory interest accrues from the date the money became due and payable, which in this count was 7/21/84 on the first invoice; 8/25/84 on the second invoice; and 9/15/84 on the third.
The total amount due the plaintiff is $208,849.11 (includes interest to 9/15/94), plus total per diem interest of $28.49 from 9/15/94 to date of judgment.
b. Count II — Equipment and Standby Costs and Expenses.
EI owes the plaintiff for the rental cost of plaintiff's equipment properly seized by the City under CT Page 1705 the contract, in the amount of $38,601.
EI also owes the plaintiff for the cost of actual standby labor in the amount of $2,871. The total amount owed is $41,472.
The reasons why the plaintiff is entitled to these amounts are more fully discussed in Section III A.2., A. and B. of this Memorandum of Decision, with reference to the plaintiff's similar claims against Aetna, pages 17, 18, 19, and 20.
No interest is awarded in this count because the amount claimed was greatly reduced by the plaintiff just before trial, and therefore not ascertainable until then. Detention of the money was not wrongful under the circumstances.
c. Count III — Impounded Steel.
From 9/15/84 to 3/15/85, the plaintiff lost the use of its steel which was in the cofferdam, and therefore is entitled to the fair rental value as stated in the contract. On 3/15/85, the plaintiff found out that it could not take back its steel, since it was being turned over to EI's successor, so in accord with contract 82-11, the plaintiff liquidated the steel for its full value of $72,410.
EI owes the plaintiff on the invoice of 10/24/84, rental of $18,269.50, on invoice of 11/21/84, rental of $1,559.60. in invoice of 12/14/84, rental of $1,559.60, on the invoice of 1/17/84, rental of $1,559.60, on invoice of 3/8/85, rental of $1,559.60, total rental of $24,507.90, plus the liquidation value of $72,410.
The total amount due the plaintiff is $96,917.90 for rental and liquidation.
No interest is being awarded because substantial legal questions existed, as to how damages should be determined; it is the court's judgment that the demands of justice do not require the imposition of interest; that the detention of the money was not wrongful under the circumstances; and that the money was not "payable". CT Page 1706
d. Count IV — 5% Retainage From Progress Payments.
EI owes the plaintiff the 5% of payments due the plaintiff for retainage under the subcontract. This amount is $10,284.21 plus interest of $10,284.21 from 9/15/84 to 9/15/94, a total of $20,568.42, plus per diem interest of $2.82 from 9/15/94 to date of judgment. Interest is awarded because detention of the money was wrongful, inasmuch as it was clearly owed.
e. Count V — Extra Work for Removal of Pipes fromCofferdam.
This was valid extra work under the subcontract for removal of two pipes placed mistakenly within the bounds of the cofferdam site by EI and another subcontractor. Interest is awarded because of wrongful detention, because these extra costs are clearly allowable under the contract.
EI owes the plaintiff for the cost of removing the 12" pipe, $4,674.00 plus interest of $4,740.59 from 7/25/84 to 9/15/94, a total of $9,414.59, plus per diem of $1.28 from 9/15/94 to date of judgment; and $6,543.00 for removing the 36" pipe, plus interest of $6,508.94 from 10/4/84 to 9/15/94, a total of $13,051.94 plus per diem interest of $1.79 from 9/15/94 to date of judgment, a net total in Count V of $22,466.53 plus per diems.
f. Count VI — Failure to Provide Electricity
Under the terms of the subcontract, EI had to provide the plaintiff with electricity for pumps used to remove water from the cofferdam. They failed to do 80 in July 1984, thereby causing the plaintiff additional costs and expenses. For this, EI owes the plaintiff a corrected invoice in the amount of $2,217.00 plus interest from 7/23/84 to 9/15/94 in the amount of $2,256.72, a total of $4,473.72, plus per diem interest of $.61 from 9/15/94 to date of judgment. Interest is awarded because detention of the money was wrongful. Plaintiff was cleary entitled to this under the contract.
g. Count VII — Lost Margin, Overhead and RelatedCT Page 1707Expenses.
 [I]n a breach of contract action for damages, the aggrieved party is entitled to be placed in the same economic position it would have been in if the contract had been performed.
Steeltech Building Products, Inc., 18 Conn. App. 469, 472
(1989).
Such party may recover lost profits which do not need to be proven by mathematical precision, and general and administrative overhead expenses may be awarded.Steeltech, supra, at page 472.
1. Lost Margin
There was no basis to justify EI's de facto termination of its contract with the plaintiff. EI never claimed that the plaintiff was in default.
The plaintiff has offered credible evidence that as a result of EI's breach of contract, the plaintiff lost $11,060 in costs incurred but not billed; $17,654 in profits for work performed before termination; and $14,510 in profits it would have earned if the subcontract had been completed. The total amount owed is $43,224.
Interest is not awarded because these amounts were not properly quantified until just before trial.
2. Unabsorbed Home Office Overhead
The court finds that plaintiff has not sustained its burden of proving this element of its claimed damages. The testimony offered was too nebulous.
h. Count VIII — Increased Costs and Expenses Caused byDiffering Site Conditions In Area of Cofferdam.
Since EI was defaulted, it has admitted the truth of the material facts alleged in the Complaint, so the court must find as to EI that the actual subsurface conditions encountered by the plaintiff were unanticipated and CT Page 1708 therefore not reflected in the plaintiff's cost estimate or contract. The extra costs incurred were a detriment to the plaintiff, and the extra work performed was a benefit to EI and the City.
The plaintiff is entitled to $111,381 for the extra work, plus $111,381 for interest from 9/15/84 to 9/15/85, a total of $222,762 plus per diem interest of $30.52 from 9/15/94 to date of judgment. Interest is awarded because detention of the money was wrongful.
i. Count IX — Increased Labor Costs Caused By EI's Delay
EI was responsible for an approximate one year delay in plaintiff's being able to begin its work. During this delay period, the plaintiff's labor costs increased by $2,493. The plaintiff is entitled to $2,493 plus interest from 9/15/84 to 9/15/94, a total of $4,986. plus per diem interest of .68 cents from 9/15/94 to date of judgment. Interest is awarded because detention of the money was wrongful.
 III BAC v. AETNA
A. Aetna's Liability On Its Bond And Under Section 49-42of the Connecticut General Statutes.
Aetna's bond provided as follows:
 NOW THE CONDITION OF THIS OBLIGATION IS SUCH THAT if . . . EI CONSTRUCTORS, INC. shall well and truly keep and faithfully perform all the terms and conditions of said contract [82-111] . . . and shall pay for all materials, and for all labor performed, and for the rental or hire of vehicles, power shovels, concrete mixers, tools and other appliances, and equipment used or employed in the execution of said Contract . . . then this obligation shall be of no effect; otherwise it shall remain in full force and virtue.
 The bond further provides that it is made for the use and benefit of all persons, firms CT Page 1709 and corporations who may furnish any material or perform any labor for or an account of said contract, or rent or hire out any appliances and equipment used or employed in the execution of this Contract, and they and each of them are hereby made obligees . . . and they may proceed or sue hereon.
BAC furnished material and equipment, and performed labor "for or on account of" Contract 82-11, and was protected by Aetna's bond.
EI defaulted under Contract 82-11 in that:
1. it unreasonably delayed the work to be performed;
2. it violated the Contract's terms and conditions;
The plaintiff was damaged by EI's failure to "well and truly keep and faithfully perform" Contract 82-11.
The plaintiff claims that by virtue of its bond, Aetna, as surety, agreed to be answerable for EI's debt, and made a direct promise to perform the obligations of EI in the event that EI failed to perform. The plaintiff further claims that Aetna's liability under this bond is measured by the terms of the bond, which are clear and unambiguous. They provide that if EI "shall well and truly keep and faithfully perform all the terms and conditions of said contract . . . this obligation shall be of no effect; otherwise it shall remain in full force and virtue."
In determining Aetna's liability under the bond, the court looks to the following bond language:
 This Bond is made for the use and benefit of all persons, firms, and corporations, who may furnish any material or perform any labor for or on account of said Contract, or rent or hire out any appliances and equipment used or employed in the execution of this Contract. . . .
Joint Exhibit 4.
The contract referred to is 82-11, between the City CT Page 1710 and EI.
As the bond states, and as provided by Section 49-42
of the Conn. Gen. Stat. (1983), Aetna's liability is limited to payment for labor and material on account of the contract, and for appliances and equipment used or employed in the execution of the contract. These are Aetna's specific responsibilities, it is not a general guarantor of all the obligations of EI; it is not an insurer.
The court must therefore consider whether Aetna is liable under its bond and under section 49-42 of the Conn. General Statutes, for the various claims of the plaintiff; that is, are these claims properly for the payment of labor and materials; and for appliances and equipment, used in the execution of the contract (82-11), and if so, what are the damages? In so doing, the court will permit Aetna, as surety, to avail itself of any defense available to EI. See Ducci ElectricalContractors, Inc. v. Aetna Insurance Co., et al. 13 CLT 22-529, and Star Contracting Corp. v. Manway ConstructionCo., 32 Conn. Sup. 64 (1973), and 74 Am.Jur.2d, Suretyship § 25, 1974.
1. Count I — Plaintiff's Invoices of July, August,and September, 1984 and Count IV, Retainage.
The plaintiff is owed for various progress payments for work done and invoiced in accordance with the contract, and for 5% retainage, as follows:
a. period through 7/20/84 — $ 42,020.93
b. period 7/20/84 through 8/24/84 — $ 38,510.57
c. period from 8/25/84 to 9/14/84 — $ 23,471.08
 d. retainage — $ 10,284.21 ----------- Total $114,286.79
a. Progress Payments and Retainage.
Aetna claims the plaintiff is not entitled to CT Page 1711 payment under its subcontract because CDM did not approve payment of the contract monies requested by the plaintiff and EI paid the plaintiff all sums that were approved.
Under contract 82-11, EI was required to "regularly and punctually pay the workmen who shall be employed on the aforesaid work, as well as any and all subcontractors." This language was incorporated into Aetna's bond. EI did not comply with this requirement. Also EI violated Contract 82-11 by failing to certify to the City, before receiving its final payment, that all subcontractors had been paid in full. The City has paid EI all sums due EI under 82-11. Therefore, Aetna's "pay when paid" defense is unavailing.
Even if the City did not fully pay EI, (although the court finds that it did), EI would still be obligated to pay the plaintiff. Article 2.1 of the contract, the "pay when paid" clause, has been interpreted by a large majority of jurisdictions as meaning that such a provision requires the contractor or surety to pay the subcontractor within a reasonable time, even when the owner never pays the general contractor. See Thos. J.Dyer Co. v. Bishop International Engineering Co., 303 F.2d 655
(6th Cir. 1962); Statesville Roofing HeatingCo., Inc. v. Duncan, 702 F. Sup. 118 (W.D.N.C., 1988);OBS Company Inc., v. Pace Construction Corp. , 558 So.2d 404
(Fla., 1990); Peacock Construction Co., Inc. v.Modern Air Conditioning, Inc., 353 So.2d 840 (Fla., 1977); Southern States Masonry, Inc. v. J.A. JonesConstruction Co., 507 So.2d 198 (La., 1987); JeremiahSullivan Sons, Inc. v. Ray-Locks, Inc., 459 N.E.2d 837
(Mass.App.Ct., 1984); Eastern Heavy Constructors, Inc.v. Fox, 188 A.2d 286 (Md., 1963); Otis Elevator Co. v.George A. Fuller Co., 172 App.Div.2d 732, 569 N.Y.S.2d 118
(N.Y.A.D. 2 Dept., 1991); Schuler-Haas Electric Corp. v.Aetna Casualty Surety Co., 49 App.Div.2d 60, 371 N.Y.S.2d 207
(N.Y.A.D. 4 Dept., 1975) aff'd 40 N.Y.2d 883,389 N.Y.S.2d 348, 357 N.E.2d 1003 (1976); Power PollutionServices, Inc. v. Suburban Power Piping Corp. ,598 N.E.2d 69 (Ohio App. 8 Dist., 1991); United Plate Glass Companyv. Metal Trims Industries, Inc., 525 A.2d 468 ( Pa. Cmwlth. 1987). See also Mootz, "The Enforceability of Paid When Paid Clauses in Construction Contracts," 64 Conn. B.J. 257, 265 (1990). CT Page 1712
Furthermore to interpret this language as urged by Aetna would directly conflict with EI's obligation under Contract 82-11, which required EI to regularly and punctually pay subs and to certify, before the City made final payment to EI, that subs had been paid in full. Such ambiguity would have to be resolved against EI and Aetna, since they furnished the bond. See Town ofBrookfield v. Greenridge, Inc., 177 Conn. 527, 535
(1979).
Under the explicit terms of its bond, Aetna's obligation is released only if EI fully performs Contract 82-11, including paying for all labor and materials, and since EI did not fully perform and pay for the plaintiff's labor and materials, Aetna is liable under its bond for plaintiff's progress payments and retainage.
In Star Contracting Corp v. Manway Construction Co.,Inc., 32 Conn. Sup. 64, the court stated that the plaintiff subcontractor in a claim for payment on a surety bond, is not "absolutely precluded from recovery under the surety contract. . . . [I]f the promisor is himself the cause for failure of the condition upon which his payment obligation depends, he cannot take advantage of the failure." Here if EI was not paid in full, it was because of EI's own breach.
To allow the City's non-payment to prevent plaintiff's recovery under both the subcontract and the payment bond would entirely frustrate the public policy of Conn. Gen. Stat. 49-41 and 49-42.
Aetna's claims concerning Mr. Maranchie's recommendations to the City regarding how much EI should be paid are not determinative. EI and the plaintiff negotiated a schedule of values to govern progress payments due to the plaintiff. BAC performed the work accordingly. This schedule of values was based on an agreement distinct from the City-EI payment schedule. The plaintiff's July and August 1984 invoices were approved by EI, but there was no opportunity to review plaintiff's September 1984 invoice, which was the plaintiff's reasonable estimate of the work done according to the BAC-EI schedule of values. CT Page 1713
The plaintiff is entitled to $114,286.79 as detailed above for progress payments and retainage. Under the above described circumstances, the detention of the money was wrongful. The fact that Aetna vigorously contested this claim does not mean that the detention was not wrongful.
 The fact that this dispute is "hotly contested", does not impact on the trial court's determination that the defendant wrongfully detained the defendant's money.
Solomon v. Hall-Brooke Foundation, Inc., 30 Conn. App. 136,147 (1993).
These amounts were payable and wrongfully withheld, and in order to comport with the demands of justice and equity, prejudgment interest is awarded.
The total amount owed for progress payments, including interest to 9/15/94, is $208,849.11, and the total amount for retainage including interest to 9/15/94, is $20,568.42, a total of $229,417.53 plus per diems of $28.49 (progress payments), and $2.82 (retainage) from 9/15/94 to date of judgment.
2. Count II — Rental Costs of Equipment and Standby Labor
A. Equipment.
The plaintiff worked on this job from May 1984 until 9/14/84, when the City notified the plaintiff that EI had been ordered to discontinue all work, and that the plaintiff's access to the site was revoked. EI did not terminate their contract with the plaintiff in accord with the termination provision of their contract. The plaintiff kept workers on standby, and until mid October, the City, by authority of Contract 82-11, impounded equipment and materials of the plaintiff. The plaintiff was not paid for costs of its labor and equipment on standby.
The equipment was on site and available for use, and therefore covered under section 49-42. Under the federal CT Page 1714 Miller Act, subcontractors are entitled to rental costs for idle equipment. See United States ex rel. CarlisleConstruction Co. v. Coastal Structures, Inc.,689 F. Sup. 1092, 1098-1101 (1988). This court may use Miller Act decisions in interpreting Section 49-42. See Okee Industries, Inc. v. National Grange Mutual Ins.Co., 225 Conn. 367, 374 (1993). Furthermore, Connecticut has recognized loss of use of idle machines. See White Oak Corporation v. Department ofTransportation, 217 Conn. 281, 294 (1991).
This equipment was held for the City and Aetna's use during negotiations concerning completion of the project. As soon as reasonably possible after the equipment was released, the plaintiff removed it and began devoting it to other jobs.
The plaintiff has charged AED rates for idle time for the impounded equipment as required by Contract 82-11, without adjustment for lack of wear and tear while the equipment was idle. No adjustment is required because AED rates are portal to portal thereby allowing for idle time; furthermore, there is no provision in the AED Manual for idle time reduction, nor is it the industry practice to reduce AED Manual rates for idle time.
B. Standby Labor
Under Section 49-42, the plaintiff is entitled to recover for labor furnished in the prosecution of the work. Under the circumstances here present (i.e. possibility that the job would be restarted at any time) plaintiff acted in good faith in keeping workers available and is entitled to costs of standby labor.
Under Count II, plaintiff is due $38,601.00 (rental cost of seized equipment) plus $2,871.00 for standby labor costs; a total of $41,472.00. Interest is not awarded because the amount claimed was greatly reduced just before trial.
3. Count III — Rental and Liquidation Costs of SteelSheeting and Structural Members.
CT Page 1715
In Count III, the plaintiff claims payment for steel it furnished under Contract 82-11, which was never returned as contemplated. The plaintiff served as a steel supplier and as a subcontractor under Contract 82-11.
As a supplier, the plaintiff is entitled to recover from Aetna the rental costs incurred from work stoppage on September 14, 1984 until March 15, 1985, when it became clear this steel would not be returned. The prevailing market rates were $150.00 per ton for the first month and $14.00 per ton thereafter. The City first took possession of plaintiff's steel under the "abandonment or delay" section of Contract 82-11. Then on March 15, 1985, the City assumed ownership of the steel and made it clear that it did not intend to return it. At that point Aetna became liable for the liquidation value of the steel at the contract price of $650.00 a ton. Under Gen. Statutes 49-42, the plaintiff is entitled to payment for the steel. See United States For Use andBenefit of Martin Steel Constructors, Inc. v. AvantiConstructors, Inc., 750 F.2d 759, 761 (9th Cir. 1984). The City's use of the steel reduced the completion costs for which Aetna was responsible, and Aetna has been credited with the costs of the plaintiff's steel. Aetna is therefore liable for steel rental of $24,507.90 and liquidation of $72,410.00, a total of $96,917.90. The amount of steel involved was 111.4 tons, which includes sheeting and bracing.
No interest is awarded because of serious substantive legal issues presented. Detention of money was not wrongful under the circumstances.
Aetna has failed to prove that the plaintiff failed to mitigate damages because it did not recover the steel the City offered it in 1992. When the City decided to keep the steel on March 15, 1985, the effect of that was that the City purchased the steel. The City paid Aetna for it by giving credit for it in the settlement of the EI-Aetna-Waterbury case. Therefore, the plaintiff no longer owned the steel. Furthermore, there was not sufficient evidence as to how much the plaintiff would have mitigated its damages by picking up the offered steel. It was substantially damaged and there was no CT Page 1716 evidence of the costs of picking it up, transporting it, and reconditioning it.
4. Count V — Extra Work In Removal of Two Pipes.
 5. Count VI — Cost of Failure to Supply Electricity.
Aetna has conceded in Page 58 of its September 1, 1994 Post Trial Brief, that the plaintiff is entitled to the costs of removing the extra pipes from the cofferdam and the costs resulting from the failure to provide electricity in July 1984. Interest is awarded; these costs are clearly allowed under the contract.
In Count V Aetna owes the plaintiff for the cost of removing the 12" pipe, $4,674.00 plus interest of $4,740.59 from 7/25/84 to 9/15/94, a total of $9,414.59, plus per diem interest of $1.28 from 9/15/94 to date of judgment; $6,543.00 for removing the 36" pipe, plus interest of $6,508.94 from 10/4/84 to 9/15/94, plus per diem interest of $1.79 from 9/15/94 to date of judgment, a net total of $22,466.53, plus per diems of $3.07 from 9/15/94 to date of judgment.
In Count VI, Aetna owes the plaintiff $2,217.00 plus interest from 7/23/84 to 9/15/84 in the amount of "$2,256.72, a total of $4,473.72, plus per diem interest of $.61 from 9/15/94 to date of judgment.
Lost Margin.
a. Unabsorbed Home Office Overhead.
The court finds that the plaintiff has not sustained its burden of proving this element of its claimed damages. The testimony on this issue was nebulous, and the court is unable to conclude that recovery of the claimed amount is directly related to the achievement of the purpose of damages in a breach of contract action; that is, to place the aggrieved party in the same economic position it would have been in if the contract had been performed. See Steeltech Building Products,Inc. v. Edward Sutt Associates, Inc., 18 Conn. App. 469,472 (1989). CT Page 1717
b. Lost Margin.
1. Costs of Work Performed But Not Billed.
 The plaintiff would eventually have been paid these costs as part of the full contract price. If there had been no default, the plaintiff would have received all costs plus profit. The $11,060 of labor and materials furnished is a sum "justly due's under Gen. Stat. 49-42. No interest is awarded because the amount claimed was not ascertained until just before trial.
2. Profit On Work Actually Performed.
 The plaintiff established that it had earned profit of $17,654 on the work it had performed as of September 14, 1984 and it is therefore entitled to recover that amount as a sum "justly due" under Section 49-42.
 Interest is not awarded because the amount claimed was not determined until just before trial.
 3. Profit Plaintiff Would Have Realized On Work Not Performed.
Future loss of profits are not recoverable from a Miller Act surety.
 We hold that increased out-of-pocket costs caused by construction delays fall within the intended coverage of the Miller Act. Thus, a subcontractor may recover these costs from a Miller Act surety. A subcontractor may not recover from the surety, however, any lost profits caused by the delay. A `claim for lost profits does not involve actual outlay and' falls outside both the spirit and the letter of the [Miller] Act.' (citations omitted).
Mai Steel Service, Inc. v. Molnick's Inc., 981 F.2d 414,417-418 (9th Cir. 1992); See United States ex rel.CT Page 1718Lochridge-Priest, Inc. v. Con-Real Support Group, Inc.,950 F.2d 284 (5th Cir. 1992); United States ex rel.T.M.S. Mechanical Contractors, Inc. v. Millers MutualFire Ins. Co. of Texas, 942 F.2d 946 (5th Cir. 1991);United States ex rel. Pertun Consts. Co. v. HarvestersGroup, Inc., 918 F.2d 915 (11th Cir. 1990); United Statesex rel. Heller Elec. Co. v. William F. Klingensmith,Inc., 670 F.2d 1227 (D.C. Cir. 1982).
7. Count VIII — Extra Costs Caused By SubsurfaceConditions.
The Court finds, based on testimony of various expert witnesses, and on testimony of Mr. Chapman himself, that at the time of signing the subcontract, he was aware, or should have been aware, based on all available data, including his own investigation, that the site contained "glacial till" soils that characteristically contain cobbles and boulders of varying amounts and sizes, and that for anyone to rule out the presence of cobbles and boulders of the kind actually encountered, would be unreasonable, even if some test borings did not turn up any cobbles or boulders, or ones that were smaller than found in the cofferdam site. The plaintiff should have anticipated and made allowance for this presence, based on the totality of information available.
Mr. Chapman admitted that during his pre-bid inspection of the site, he saw numerous boulders near the raw water pump station location, and that this would be a good indication of subsurface conditions. He also acknowledged that he expected difficult driving conditions and that was one of the reasons why he used heavy sheeting equipment with shoes.
Furthermore, the plaintiff's claim was denied by the Engineer during the project, after review, because the subsurface data showed that soil throughout the site contained cobbles and boulders, so that the plaintiff should have anticipated this presence in the cofferdam area.
Mr. Chapman was aware that Contract 82-11 provided that bidders had to make their own investigations and had to assume the risk of unforeseen conditions. CT Page 1719
The court finds that the plaintiff has not sustained its burden of proving that the conditions it encountered differed materially from the conditions a reasonably prudent contractor n the shoes of Mr. Chapman should have anticipated based on the contract documents and all information available to him. The alleged extra work costs were not truly extra, that is they were not beyond the scope of the subcontract because the conditions should have been anticipated and contemplated.
8. Count IX — Increased Labor Costs.
EI's schedule of work provided at bid time, showed all of the plaintiff's cofferdam work to be complete by May, 1983. However, EI was not ready for the plaintiff to begin work until a year later. During this one year delay, the plaintiff's labor costs increased because of collectively bargained wage and fringe benefit increases the plaintiff had to pay various employees who worked on this project. Increased labor costs are recoverable. SeeWalter Kidde Construction, Inc. v. State, 37 Conn. Sup. 82 (1981), Southern New England Contracting Co. v. State,165 Conn. at 660-663 (1974).
Under Sections 49-41 et seq., Aetna is liable to the plaintiff for increased labor costs due to EI's delays. See International Harvester v. L. G. DeFelice Son,Inc., supra. Also federal cases interpreting the "Miller Act" hold that a subcontractor is entitled to out of pocket costs of delay. See Mai-Steel Service, Inc. v.Blake Construction Co., 981 F.2d 418 (9th Cir. (1992));United States ex rel. Lochridge-Priest, Inc. v. Con-RealSupport Group, Inc., 950 F.2d 284, 287 (5th Cir. 1992);United States ex rel. Pertun Construction Co. v.Harvesters Group, 918 F.2d 915, 918 (11th Cir. 1990). Aetna is liable to the plaintiff in the amount of $2,483.00. Interest is awarded because detention of the money was wrongful. The plaintiff is entitled to $2,493.00 plus $2,493.00 interest from 9/15/84 to 9/15/94, a total of $4,986.00 plus $.68 from 9/15/94 to date of judgment.
IV
CT Page 1720
 ALLOWANCE OF INTEREST UNDER SECTION 37-3a OF THE CONNECTICUT GENERAL STATUTES.
 The allowance of interest as an element of damages is primarily an equitable determination and a matter within the discretion of the trial court.
Nor'easter Group, Inc. v. Colossale Concrete, Inc.;207 Conn. 468, 482 (1988).
 Interest is not to be recovered merely as compensation for money withheld [where it is] but rather in response to considerations of fairness. It [prejudgment interest] should not be imposed when its exaction would be inequitable.
Bialy [Blau] v. Delman, 368 U.S. 403, 414 (1962).
The Connecticut Supreme Court, in applying the above principles to Section 37-3a, has stated that whether interest should be awarded is a decision "to be made in view of the demands of justice rather than through the application of any arbitrary rule." See Chmielewski v.Aetna Casualty Surety Co., 218 Conn. 646, 676 (1991).
Conn. Gen. Stat. § 37-3a provides that prejudgment interest "may be recovered and allowed in civil actions as damages for the detention of money after it becomes payable." This court must determine "whether the detention of the money is or is not wrongful under the circumstances." Middlesex Mutual Assurance Co. v.Walsh, 218 Conn. 681, 701-702 (1991).
This court has utilized and applied these legal principals in determining whether to award prejudgment interest in the various counts in which it has found for the plaintiff.
 V. PLAINTIFF'S CLAIM FOR INTEREST UNDER SECTION 52-192a OF THE CONNECTICUT GENERAL STATUTES.
CT Page 1721
The plaintiff filed its original complaint on November 30, 1984. On December 18, 1984, it filed an offer of judgment directed to all three defendants for $300,000.00, and on December 16, 1985, filed a second offer of judgment, this time for $260,000. None of the defendants ever accepted either offer of judgment, nor did any of them ever file an objection to either offer of judgment. Aetna and the City filed motions to strike the plaintiff's offer of judgment in November 1993.
Section 52-192a(b) provides that if the plaintiff has recovered an amount equal to or greater than the sum certain stated in his "offer of judgment", the court shall add to the amount so recovered 12% annual interest on said amount, computed from the date the complaint was filed (under the facts of this case), and the court may award reasonable attorney's fees in an amount not to exceed $350.00.
The plaintiff's offer of judgment dated December 18, 1984 is in compliance with § 52-192a. The statute does not require the plaintiff to make separate offers of judgment to the various defendants or to indicate in a single offer the amount it is asking each defendant to pay. SeeFrenette v. Vickery, 522 F. Sup. 1098, 1101. (D. Conn. 1981), and Gionfriddo v. Avis Rent A Car System,Inc., 192 Conn. 301 (1984).
As the Conn. Appellate Court recently stated:
 The plain language of § 52-192a(b) specifies that "the court shall add to the amount so recovered twelve percent annual interest on said amount. . . ." This court has stated in the past that "`[w]here the legislative intent is clear and unambiguous, there is no need for statutory construction or a review of the legislative history. . . .The legislature is supreme in the area of legislation, and courts must apply said statutory enactments according to their plain terms.'" Lee v. Tufveson, 6 Conn. App. 301, 304, 505 A.2d 18, cert. denied, 199 Conn. 806, 508 A.2d 31 (1986), quoting Federal Aviation Administration v. Administrator, 196 Conn. 546, 550-551, CT Page 1722 494 A.2d 564 (1985).
Edward Denike Tree Co. v. Butler, 21 Conn. App. 366, 369-370
(1990).
Although the statute refers to the plaintiff and the defendant in the singular, it is a basic tenet of statutory construction that "[w]ords importing the singular number may extend and be applied to several persons or things, and words importing the plural number may include the singular." Conn. Gen. Stat. § 1-1(f).
The defendants assert that an offer of judgment for a unified sum addressed to three defendants collectively, is not a "sum certain," and is uncertain, unworkable and potentially productive of unjust results.
In the instant case, the defendants could have collectively, with each making a contribution, accepted the offer of judgment. If they could not agree on respective contributions, each would have to assess the risk of a judgment being entered against it individually, in an amount equal to, or greater than the offer of judgment. If any defendant wished, it could pay whatever was necessary in order to accept the offer. If, on the other hand, it wanted to take its chances that any judgment against it would be less than the offer of judgment, it was free to do so. Having made this choice, such defendant runs the risk of being liable for § 52-192a
interest if the judgment against it is equal to or greater than the offer of judgment.
The defendants further claim that the offer of judgment should be stricken because the plaintiff has asserted new claims since making its offer of judgment.
The plaintiff's changes in damage calculations and clarification of some of the counts alleged do not change the basic claims underlying the action. See Lutynsky v.B.B. Trucking, Inc., 31 Conn. App. 806, 628 A.2d 1
(1993) cert. granted, 227 Conn. 914, ___ A.2d ___ (1993).
The motions to strike the Offer of Judgment are denied. CT Page 1723
Should Offer of Judgment Interest Be Tolled For APeriod of Time Because Of An Alleged Stay Of This Action.
Aetna claims in its Post Trial Brief on Pages 96 and 97 that this action was stayed by this court, (Pickett, J.) pending resolution of federal litigation. The brief makes no effort whatsoever to establish the period of time during which the stay was in effect. The only date mentioned is September 3, 1992, which is the date of Judge Pickett's Articulation in connection with a decision on plaintiff's application for a pre-judgment remedy, in which he stated:
 This court had an agreement with the United States District Court, the Honorable Ellen B. Burns, that all state court proceedings concerning this and other similar litigation would be held in abeyance pending the outcome of the District Court litigation.
The plaintiff claims that since the offer of judgment was not accepted within the statutory thirty day period, it was rejected.
The plaintiff further argues that no court entered a stay, and the non-existent stay was never lifted.
The official court docket sheet shows no orders concerning a stay. It does show that the parties engaged in activities throughout the ten years of litigation except during the period from December 23, 1988 to December 5, 1991.
The plaintiff has acknowledged in its October 3, 1994 reply brief to Aetna's post trial brief on page 83, footnote 45, that "BAC did agree that it made sense for its claims to be tried after a prompt resolution of claims among Waterbury, CDM, EI and Aetna in federal court."
The plaintiff claims that the Connecticut Appellate Court has already settled this issue in Blakeslee ArpaiaChapman, Inc. v. EI Constructors, Inc., 32 Conn. App. 118,122 n. 7, (1992). However, that comment was strictly CT Page 1724 dicta and the issue of a stay was not before the court.
Since Conn. Gen. Stat. § 52-192a is punitive in nature, it would be inequitable to penalize the defendant during a period when the parties agreed, either formally or informally, to stop the normal progress of the case toward judgment. But for this agreement, the case would have come to judgment sooner, and the 52-192a interest would be smaller.
On the other hand, there was no evidence brought forth in this case concerning when any such informal stay began, even if the court were to find that it ended when U.S. District Court Judge Ellen Burns, filed her decision in the U.S. District Court litigation referred to by Judge Pickett, supra.
The court cannot speculate as to the length of the period of any "stay", and therefore finds that there was no period of stay proved, and denies the motions to limit the offer of judgment.
AMOUNT OF JUDGMENTS
A. Judgment may enter for the plaintiff against EI as follows:
1. Count I — $208,849.11 (includes interest to 9/15/94) plus per diem interest of $28.49 from 9/15/94 to date of judgment, February 21, 1995, an additional 160 days, a net total of $213,407.51.
2. Count II — $41,472.00.
3. Count III — $96,917.90.
4. Count IV — $20,568.42 (includes interest to 9/15/94) plus per diem interest of $2.82 from 9/15/94 to February 21, 1995, a net total of $21,019.62.
5. Count V — $22,466.53 (includes interest to 9/15/94) plus per diem interest of $3.07 from 9/15/94 to February 21, 1995, a net total of $22,957.73.
6. Count VI — $4,473.72 (includes interest to CT Page 1725 9/15/94) plus per diem interest of $0.61 to February 21, 1995, total $4,571.32.
7. Count VII — $43,224.00.
8. Count VIII — $222,762 (includes interest to 9/15/94) plus per diem interest of $30.52 to February 231, 1995, total — $227,645.20.
9. Count IX — $4,986.00 (includes interest to 9/15/94) plus per diem of $0.68 to February 21, 1995 — total — $5,094.80.
Judgment against EI $676,310.08
The court adds 12% interest from November 30, 1984 under Section 52-192a plus $350.00 attorney's fee.
1. Judgment $676,310.08
 2. 12% interest from 11/30/84 — 11/30/94 811,572.10 (10 years at $81,157.2096 per year)
 3. 12% interest from 12/1/94-2/21/95 (83 days at 222.34 per day) 18,455.05
 4. Attorney's fee 350.00 ------------- Total $1,596,687.23
B. Judgment May enter for the Plaintiff Against Aetna asfollows:
1. Count I — $208,849.11 (includes interest to 9/15/94) plus per diem interest of $28.49 from 9/15/94 to date of judgment, February 21, 1995, an additional 160 days, a net total of $213,407.51.
2. Count II — $41,472.00.
3. Count III — $96,917.90.
4. Count IV — $20,568.42 (includes interest to 9/15/94) plus per diem interest of $2.82 from 9/15/94 to February 21, 1995, a net total of $21,019.62. CT Page 1726
5. Count V — $22,466.53 (includes interest to 9/15/94) plus per diem interest of $3.07 from 9/15/94 to February 21, 1995, a net total of $22,957.73.
6. Count VI — $4,473.72 (includes interest to 9/15/94) plus per diem interest of $0.61 to February 21, 1995, total $4,571.32.
7. Count VII — $28,714.00.
8. Count VIII — 0
9. Count IX — $4,986.00 (includes interest to 9/15/94) plus per diem of $.68 to February 21, 1995, total $5,094.80.
Judgment against Aetna $434,154.88
The court adds 12% interest from November 30, 1984 under Section 52-192a plus $350.00 attorney's fee.
1. Judgment $434,154.88
 2. 12% interest from 11/30/84 — 11/30/94 (10 years at $52,098.5856 per year) 520,985.86
 3. 12% interest from 12/1/94 — 2/21/95 (83 days at $142.74 per day) 11,847.42
 4. Attorney's fee 350.00 ----------- Total $967,338.16
Judgment may enter against Aetna in the total amount of $967,338.16.
 VI.
Plaintiff v. Waterbury
The plaintiff's claims against Waterbury are contained in Counts II, III and VIII of plaintiff's ThirdAmended Complaint, dated December 21, 1993. CT Page 1727
The plaintiff has conceded that Waterbury is not liable for losses claimed in these three counts to the extent that Aetna is liable. See plaintiff's October 3, 1994 reply brief to the City's post trial brief, pages 1 and 2; and pages 20 and 21 of the transcript of the November 16, 1994 closing arguments.
Since the court has found Aetna liable for the losses claimed in Counts II and III, Waterbury is not liable for these losses.
As to Count VIII, the court finds that the plaintiff has failed to sustain its burden of proving that the City negligently misrepresented the site conditions for the project work, and the court further finds that the major, proximate, principal, predominant cause of the plaintiff's losses under Count VIII was the negligence of Mr. Chapman. These issues were considered by the court earlier in this Memorandum of Decision in its discussion concerning whether Aetna is liable to the plaintiff in Count VIII for extra costs caused by differing subsurface conditions. The court will not repeat that analysis but will incorporate it into this finding.
Judgment may enter accordingly in favor of the City of Waterbury on all counts directed against it.
RICHARD A. WALSH, J.