FIDELITY AND CASUALTY COMPANY OF NEW YORK, Respondent, *v.* JOHN S. FINCH, Appellant.

Third Department, January 24, 1957.

*James E. Brearton* for appellant.

*Frank J. Warner, Jr.,* and *Charles B. Sullivan* for respondent.

FOSTER, P. J.  A summary judgment based on an order of the Supreme Court of Rensselaer County has been found in favor of the plaintiff Casualty Company and against the defendant for the sum of $32,268.02.  From the order and judgment defendant appeals.

Appellant was the County Clerk of Rensselaer County, New York, and charged, under section 50 of the Vehicle and Traffic Law, with the obligation to account for and pay over to the Commissioner of Motor Vehicles of the State certain fees which

he collected for motor vehicle registrations, licenses and transfers. Between July 1, 1949 and July 1, 1953 plaintiff issued four annual surety bonds to the State of New York which made it liable to the State for the payment of any sums which the County Clerks of the State failed to account for and pay over in accordance with law, including the statutory obligation mentioned. In its answer appellant denied any knowledge as to the issuance of such surety bonds but that denial did not constitute a valid defense and raised no triable issue of fact.

The complaint alleges the foregoing, and also that appellant, during and beyond the period mentioned, failed to account for and pay over to the Commissioner of Motor Vehicles fees in the sum of $27,113.53; that plaintiff paid, as surety, the aforesaid sum to the State and thereby became subrogated to the right of the State to recover such amount from the appellant. These allegations, in our opinion, adequately state a cause of action. It is a rather obvious conclusion that appellant was personally liable for moneys which he collected as agent for the Commissioner of Motor Vehicles and failed to account for in violation of a statutory duty, although there is no claim that he personally embezzled the funds. It is equally obvious that the Commissioner of Motor Vehicles represented the State, in fact was the State for the purposes specified in the statute (Vehicle and Traffic Law, §§ 5, 73, subd. 2).

Appellant argues that in any event the action is one based on subrogation, and as such is an action in equity and not a case in which summary judgment may be granted under rule 113 of the Rules of Civil Practice. It is true that the doctrine of subrogration is of equitable origin but for all practical purposes it is also recognized as a legal doctrine. For many years both in this country and in England the courts have dealt with subrogation as they do with assignments. When the right of action to which the plaintiff claims to be subrogated is a legal one the cause in subrogation may be treated as an action in law (*Dunlop* v. *James,* 174 N. Y. 411). That is precisely the situation here. Respondent claims subrogation to the right of the State to maintain an action against the defendant for a violation of a statutory duty to account for moneys. The subrogation action may therefore be considered as one at law, and embraced within subdivision 3 of rule 113. Moreover it seems to have been assumed generally that in a proper case of subrogation summary judgment may be had if there are no substantial triable issues of fact (*Hamilton Fire Ins. Co.* v. *Greger,* 246 N. Y. 162).

There remains to be determined whether appellant's answer and supporting affidavits raise any convincing triable issues

of fact. It is true of course that appellant has against the respondent any defense that he would have had if he had been sued directly by the State. It is also true that respondent may recover only the amount which it was reasonably required to pay under the terms of its surety bonds. As to anything beyond this obligation it would be merely a volunteer and not entitled to subrogation.

After a shortage in appellant's accounts was apprehended an audit was made by the State Department of Audit and Control. Pertinent portions of this audit were submitted by both parties on the application for summary judgment. The period covered was from November 1, 1949 to July 14, 1953, and according to the affidavit of the principal examiner the initial date was chosen because a prior examination had covered the period from November 1, 1947 to October 31, 1949. The prior examination indicated a balance of $1,158 owing to the State as of the close of business on October 31, 1949, but the audit involved here assumed a zero balance as of November 1, 1949.

Beyond the points already covered appellant argues in this court: (1) That there was already a shortage of $1,158 at the beginning of the audit, and whether this occurred before or after the first bond was issued has not been shown; (2) That the sum of $26.19 was lost at a time outside the period covered by plaintiff's bonds; (3) That the most respondent was obligated to pay the State was the sum of $20,000. The second point mentioned in this paragraph is conceded and hence the judgment, if affirmed, must be corrected in that respect.

It is reasonably clear that the sum of $1,158 which appellant claims is in controversy, was not included in the ultimate total shortage of $27,113.53 found due the State. The figures found in the official audit, and used in part as exhibits by appellant, are proof of this assertion. The bank deposits actually made in the month of November, 1949, for which appellant was credited in the computations relative to the overall shortage, amounted to $5,591.24 (there were two November items deposited in December, 1949 which are not included here). If the sum of $1,158 is added to this figure a total of $6,749.24 is reached, which is the total bank deposits indicated on another audit sheet for the month of November, 1949. Thus it is clear that the item of $1,158 was not charged against appellant as a shortage occurring at any time, and was considered merely as an amount due on October 31, 1949 although not actually deposited until November 2, 1949, and this explains why the auditors assumed a zero balance as of November 1, 1949. Under the circumstances we think appellant has nothing to complain of on that score.

Appellant's other point, that the most respondent was obligated to pay the State was $20,000 is equally without merit. For the period between November 1, 1949 and July 14, 1953 appellant received for the benefit of the State the sum of $3,624,023.02, and has been credited with $3,596,909.49 in deposits to the State's account and cash on hand. As a matter of simple computation therefore a shortage of $27,113.53 occurred during this period, but as heretofore indicated $26.19 of this amount is not recoverable under the complaint because this loss occurred at a time when none of the bonds designated in the complaint by numbers were in force and effect. Each bond was conditioned annually in the sum of $20,000, and four bonds are involved, beginning with the first on July 1, 1949 and terminating with the fourth on July 1, 1953. Respondent concedes that the shortage of $26.19 occurred after the terminal date of the fourth bond and hence is not covered by the complaint herein.

Beyond and except for the foregoing it is clear from official records that the entire shortage occurred after November 1, 1949. Appellant contends however that since it cannot be determined precisely when each and every shortage began that respondent was liable for only one bond period at the most, or the sum of $20,000; and therefore cannot recover more than that amount against him. This obvious difficulty of which appellant seeks to take advantage is due to the fact, as the records indicate, that shortages fluctuated from time to time but gradually became cumulative, and apparently were covered in many instances by someone using receipts of one date to cover previous liabilities. Indeed, at some periods the shortages were so high as to exceed the eventual total shortage. It does appear however, as we read the records, that if the existing shortages at the end of each bond period had been discovered and claimed that none of them would have equalled the sum conditioned in each bond for liability not to exceed $20,000. In view of all this appellant has not demonstrated any fair triable issue of fact in connection with this alleged defense. Nor is it of any consequence, as we view it, that respondent has allocated the payment of certain shortages to the last two bonds. Certainly these are not matters which appellant could urge as defenses against the State, and, except for something it volunteered without compulsion or interest, respondent occupies in this action the same position as the State would have occupied had it sued directly. It requires no argument in the light of the facts disclosed to establish the proposition that respondent was in no sense a volunteer or an interloper, and that it acted pursuant to a reasonable determination that it was liable. Faced with official

records that indicate an overall shortage of $27,113.53 it was not required to resort to litigation in order to assure its right of subrogation against appellant. It was only required to exercise the judgment that a reasonably prudent person would have exercised under the same circumstances.

The judgment and order should be modified by deducting the sum of $26.19 from the amount claimed, and fixing interest from January 12, 1955 to September 7, 1956, and, as modified, affirmed, with costs.

BERGAN, COON, HALPERN and GIBSON, JJ., concur.

Judgment and order modified by deducting the sum of $26.19 from the amount claimed, and fixing interest from January 12, 1955 to September 7, 1956, and, as modified, affirmed, with costs.