**GENERAL INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

**K. CAPOLINO CONSTRUCTION CORP., K. Capolino Design and Renovation, Ltd., Kenneth L. Capolino and Patricia M. Capolino, Defendants.**

**No. 94 Civ. 8089 (WCC).**

United States District Court, S.D. New York.

Dec. 19, 1995.

Hart & Hume (Benjamin D. Lentz, of counsel), New York City, for Plaintiff.

Meyer & Wild (J. Edward Meyer, Patricia B. Wild, of counsel), New York City, for Defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

■ On November 9, 1995, we issued an opinion and order in this case denying the parties' cross-motions for summary judgment. Plaintiff General Insurance Company of America ("General") has moved for reargument of the portion of our decision that denied its motion. Defendants K. Capolino Construction Corp., K. Capolino Design and Renovation, Ltd., Kenneth L. Capolino and Patricia M. Capolino (collectively, "Capolino") oppose reargument. To prevail on a motion for reargument, the moving party must demonstrate that the court overlooked controlling decisions or factual matters that might have materially influenced the earlier decision. *See Violette v. Armonk Assocs.*, 823 F.Supp. 224, 226 (S.D.N.Y.1993). Although we take this opportunity to clarify the reasoning behind our disposition of General's summary judgment motion, plaintiff has not called our attention to any matters that we previously overlooked. We therefore adhere to the result reached in our prior decision.

We assume familiarity with our earlier order and do not recite the facts of the case here. In brief, our decision held that General was not entitled to summary judgment on the issue of defendants' liability for expenses incurred in completing the construction contracts between Capolino and the White Plains Housing Authority ("WPHA") because there were triable issues of fact regarding whether the WPHA was in default of the construction contracts and whether General acted in good faith in completing the contracts. We based this holding on the terms of the indemnity agreement between Capolino and General and on the terms of the performance bonds issued to the WPHA by General, as surety, on Capolino's behalf.

■ General asserts that we erred in looking beyond the express terms of the indemnity agreement to consider the issue of whether the WPHA was in default. General contends that under New York case law, when the contractor and the surety have signed a written indemnity agreement, that agreement alone governs their relationship. It argues that we "mixed apples and oranges" by referring to the terms of the performance bonds. We disagree. We acknowledge, however, that our reasoning was not fully explained in our previous opinion.

■ A crucial point in our argument, which admittedly was never explicitly stated in our order, is that the New York case law on which plaintiff relies addresses only one of

the issues that we face in this case. Therefore, although those cases are certainly relevant to our analysis, they are not dispositive of plaintiff's motion for summary judgment. In each of those cases, the issue addressed by the court was the effect of a provision in an indemnity agreement between a surety and a contractor that permitted the surety to recover for expenses incurred in response to an owner's claim under a performance bond whether or not the contractor had actually breached the underlying contract. *See Fidelity & Deposit Co. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983); *Bib Construction Co. v. Fireman's Insur. Co.*, 214 A.D.2d 521, 625 N.Y.S.2d 550, 552–53 (1995); *International Fidelity Insur. Co. v. Spadafina*, 192 A.D.2d 637, 596 N.Y.S.2d 453, 454 (1993). Each of those cases held that the surety could recover its expenses regardless of whether the contractor was actually in default of the underlying contract, so long as the surety acted in good faith. The indemnity agreement between Capolino and General is similar: it states that General is entitled to recover expenses incurred in good faith in response to a demand by an owner under a performance bond if the owner has declared Capolino in default. *See* General Agreement of Indemnity for Contractors, attached as Exhibit 2 to Affidavit of Wendy Ling, dated May, 5, 1995. Accordingly, as we discussed in our opinion, Capolino may not defeat General's summary judgment motion by arguing that an issue of fact exists concerning whether Capolino was actually in default.

The cases cited by plaintiff, however, consider only the issue of contractor default. They do not address allegations of owner default. For example, in *Bib Construction,* the owner terminated Bib Construction for alleged nonperformance and demanded that the surety complete the construction contract. Bib Construction sued the surety for, *inter alia,* improperly completing the contract although the surety allegedly knew that Bib Construction was not in default; the surety counterclaimed to recover its expenses under the indemnity agreement between it and Bib Construction. There was no mention of any allegation that the owner was in default. Under those circumstances, the court held that "[o]nce the [owner] declared plaintiff in default and demanded that defendant, as surety, fulfill plaintiff's obligations, defendant *was required to comply,* regardless of its own belief in the correctness of the [owner]'s action." *Bib Construction,* 625 N.Y.S.2d at 553 (emphasis added). In this case, because of the allegations that the WPHA was in default, it is by no means clear that General was required to complete the construction contracts. Hence, *Bib Construction* and the other cases cited by plaintiff do not require us to grant General's motion.

Instead, we must consider an issue that was not disputed in the cases upon which plaintiff relies: whether General was required to comply with the WPHA's demand that it complete performance on the construction contracts. This inquiry necessarily requires us to look to the performance bonds issued by General on Capolino's behalf. As we held in our order, according to the terms of the performance bonds, General was required to comply with the WPHA's demand only if there was no owner default.[1] *See* Performance Bond, at ¶ 3, attached as Exhibit 1 to Ling Affidavit. Because there is a question of fact regarding whether the WPHA was in default, General is not entitled to summary judgment.

General essentially argues that we should rely only on the indemnity agreement, while ignoring the terms of the performance bonds. We are not convinced. First, as we have explained, the case law on which General relies in advancing this proposition addresses only one of the issues involved in this case. Second, the indemnity agreement itself references the bonds. The agreement states that Capolino agrees to pay to General on demand

---

1. General repeatedly describes our ruling as based on the common law volunteer doctrine. Although we cite several cases—admittedly, not involving indemnity agreements—for the proposition that a party may not recover expenses incurred when it is not obligated to complete performance, it is clear that our opinion relies on the specific provisions of the performance bonds issued by General on behalf of Capolino, rather than on some generalized principle of the common law.

all loss or expense incurred by General "by reason of" having executed any bond. *See* Indemnity Agreement, at ¶ 1. This language clearly refers us to the terms of the performance bonds in order to determine whether the surety's expenses were incurred because it executed the bonds.

We recognize that our decision denies literal enforcement, on a summary basis, of the provisions in the indemnity agreement that state that the surety has the exclusive right to determine in good faith whether a claim upon a bond will be paid and that the surety has sole discretion to determine whether to take over the work for which the bond was executed. *See* Indemnity Agreement. As General points out, the thrust of the indemnity agreement is to permit the surety to make good faith decisions on claims without becoming involved in any legal wrangling between the contractor and the owner. This goal is obvious from the care taken in drafting the portions of the indemnity agreement and performance bonds that provide that the contractor is deemed to be in default when the owner declares a contractor default, rather than when the contractor is actually in default. This definition of contractor default permits the surety to recover promptly expenses incurred when it is required to comply with an owner's claim under a bond, regardless of how long the dispute between the owner and the contractor continues. However, granting such enforcement would require overlooking the equally specific terms of the performance bond. While we see the point of the surety's policy argument, our decision merely holds the surety to the terms of both of the agreements it negotiated.

From the perspective of judicial efficiency, it is tempting to accept the surety's invitation to construe the indemnity agreement in isolation from the terms of the performance bonds to which it refers. In this case, judicial efficiency concerns are particularly compelling as there is a pending state court action between the WPHA and Capolino in which the parties are litigating the issue of the WPHA's alleged default. Nevertheless, in the absence of controlling precedent that directs us to do so, we will not ignore the terms of the performance bonds, which state clearly that General is required to comply with the WPHA's demand for completion only if the WPHA is not itself in default.

## CONCLUSION

For the reasons set forth above, General's motion for reargument is denied.

SO ORDERED.