**GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA,**
Plaintiff,

v.

**MERRITT-MERIDIAN CONSTRUCTION CORP., Beacon Building Materials, Inc. d/b/a Beacon Building Systems, R.K.D.K. Associates, Richard L. Capolino, Dennis Capolino, Miranda Capolino and Karen A. Capolino, Defendants.**

**No. 95 CIV. 10692 (RWS).**

United States District Court,
S.D. New York.

Aug. 19, 1997.

Benjamin D. Lentz, Hart & Hume, LLP, New York City, for Plaintiff.

Vincent L. DeBiase and Anthony C. Carlini, Corbally, Gartland & Rappleyea, Poughkeepsie, NY, for Defendants.

## OPINION

SWEET, District Judge.

Plaintiff General Accident Insurance Company of America ("GAIC") has moved for an order of prejudgment attachment, pursuant to Rule 64, Fed.R.Civ.P., and for summary judgment against defendants Merritt–Meridian Construction Corp. ("Merritt"), Beacon Building Materials, Inc. ("Beacon"), R.K.D.K. Associates ("RKDK"), Richard Capolino, Dennis Capolino, Miranda Capolino, and Karen Capolino (the "Capolinos"), pursuant to Rule 56, Fed.R.Civ.P.

For the reasons set forth below, GAIC's motion for summary judgment will be granted and its motion for an order of prejudgment attachment will be denied as moot.

### The Parties

GAIC is a corporation engaged in the business of insurance and bonding. It is organized and existing under the laws of the State of Pennsylvania, with a principal place of business in Philadelphia. GAIC is authorized to conduct business in New York.

Merritt is a corporation organized and existing under the laws of the State of New York, with a principal place of business in Beacon, New York. Merritt is engaged in the construction business. RKDK is a partnership organized and existing under the laws of the State of New York. Richard, Dennis and Karen Capolino are officers of Merritt and partners in RKDK. Miranda Capolino is the wife of Dennis Capolino.

### Prior Proceedings

GAIC filed the Complaint in this action on December 19, 1995. The case was originally assigned to the Honorable Allen G. Schwartz of this court. GAIC filed the instant motion for prejudgment attachment on April 4, 1997 and the instant motion for summary judgment on April 22, 1997. The case was reassigned to Judge Robert W. Sweet on June 26, 1997, pursuant to Rule 16 of this court's

Rules for the Division of Business Among District Judges. Opposition and reply papers on the summary judgment motion were received through June 27, 1997, at which time the motion was considered fully submitted. Papers on the attachment motion were received through July 11, 1997, at which time that motion was deemed submitted.

*Facts*

Rule 56(e) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The facts presented here are construed accordingly.

This case arises out of several construction projects in Virginia and New York, for which Merritt served as general contractor. The New York projects were: (1) City of Beacon Water Treatment Plant, (2) City of Beacon Housing Authority, (3) Rehabilitation of Route 28 Bridges, (4) Rehabilitation of bridges in Selkirk, (5) Arvin Gym, and (6) Pine Bush Elementary School. The Virginia projects were: (1) Patrick Henry Library, (2) OCS Troop Clinic, (3) Orange County Field House, and (4) Waynesboro Elementary School. Merritt engaged numerous subcontractors and suppliers for these projects.[1] GAIC, as a surety, issued payment bonds, which protected subcontractors in the event of default by Merritt, and performance bonds, which protected the owners in the event of default by Merritt, in connection with each of these projects.[2] On May 27, 1993, as an inducement to and consideration for GAIC issuing the surety bonds, Merritt and the other defendants each executed a written Indemnity Agreement in favor of GAIC. Defendants have admitted issuance of the bonds and execution of the Indemnity Agreement.

GAIC brings this action on the Indemnity Agreement to recover $4,133,871 in payments it has made under the bonds to subcontractors and suppliers and in completing three construction projects (the Waynesboro Elementary School, the Orange County Field House, and the Arvin Gym) where Merritt had been terminated for default by the respective owners,[3] and for reasonable consul-

1. The subcontracts provide that "no portion of [the 15% of payment retained by Merritt as security] shall be paid until thirty (30) days after the Sub-contractor has completed all of its work and furnished all of the materials under this contract ... and the same have been duly accepted and approved by the Owner, as evidenced by the Owner making final payment to the Contractor under the Prime Contract." Merritt also retained the right to require the subcontractor to provide certain documents before it would make partial or final payments.

2. The payment bonds at issue provide that "if the Principal [Merritt] shall promptly make payment to all claimants [*i.e.*, the subcontractors and suppliers] for all labor and material ... then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions: ... every claimant ... who has not been paid in full before the expiration of a period of ninety (90) days after the date on which [work was completed or materials furnished] may sue on this bond...." The performance bonds provide that "if the Principal [Merritt] shall promptly and faithfully perform [the]

Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.... Whenever the Principal shall be, and declared by [the owner] to be in default under the Contract, the [owner] having performed [its] obligations thereunder, the Surety may promptly remedy the default, or shall promptly ... Complete the Contract ... or ... Obtain a bid or bids for completing the Contract...." Both types of bonds incorporate by reference the prime contract between Merritt and the owner, but do not expressly incorporate the subcontracts.

3. GAIC calculates its payment bond losses as follows: Beacon Water Treatment (Bond No. SB000953)—$566,358.35; Route 28 Bridge Esopus (Bond No. SB0000921)—$110,227.74; Selkirk Bridge (Bond No. SB0000924)—$120,075.45; Arvin Gym (Bond No. SB0012521)—$761,691.25; Pine Bush (Bond No. SB0000933)—$174,546.46; Beacon Housing Authority (Bond No. SB0000923)—$21,352.07; Patrick Henry (Bond No. SB0000930)—$171,542.15; OCS Troop (Bond No. SB0000925)—$121,257.73; Orange County (Bond No.

tants' fees, attorneys' fees and expenses incurred as a result of issuing these surety bonds and enforcing the Indemnity Agreement.

The Indemnity Agreement provides:

"INDEMNITY—the principals and indemnitors shall exonerate, indemnify, and keep indemnified the surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Principals or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.

\*     \*     \*     \*     \*     \*

In the event of any payment by the Surety the Principals and Indemnitors further agree that in any accounting between the Surety and the Principals, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety."

*Indemnity Agreement* ¶ 2. The Indemnity Agreement further provides:

"SETTLEMENTS—The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Principals and the Indemnitors shall request the Surety to litigate such claim or demand, or to

defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety."

*Indemnity Agreement* ¶ 11.

Paragraphs Third and Sixteenth of the Indemnity Agreement respectively provide as follows:

"Third  ASSIGNMENT—The Principals the Indemnitors hereby consenting will assign, transfer and set over, and do hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Principal to the Surety, whether heretofore or hereafter incurred the assignment in the case of each contract to become effective as of the date of the bond covering such contract, but only in the event of (1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach of said Bonds; or (2) of any breach of the provisions of any of the paragraphs of this Agreement; or (3) of a default in discharging such other indebtedness or liabilities when due;

\*     \*     \*     \*     \*     \*

(a) All the rights of the Principals in and growing in any manner out of all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds;

\*     \*     \*     \*     \*     \*

Sixteenth:  ATTORNEY IN FACT—The principals and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as the attorney-in-fact with the right, but not the obligation, to exercise all the rights of the Principals and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Principals and Indemnitors to make, execute, and deliver

SB0000928)—$527,077.12; and Waynesboro Elementary (Bond No. SB0000931)—$467,-

379.59. It calculates its performance bond losses on the projects it completed at $1,093,363.40.

any and all additional or other assignments, documents or papers deemed necessary and property by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The principals and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety and Such attorney-in-fact."

Beginning at least as early as the summer of 1994, Merritt's subcontractors and suppliers notified owners of the projects that Merritt had not paid their claims, and various owners began complaining about lack of progress on the projects. Subcontractors and owners subsequently made claims against GAIC on the bonds.

Upon receiving claims, GAIC sent a written acknowledgment and request for documentation of the claim to the claimant. At the same time, GAIC forwarded a copy of the claim to Merritt and requested that Merritt either pay the claim or inform them of the basis for disputing the claim and provide documentation thereof. In the acknowledgments of claims sent to the owners, GAIC also requested that the owners not make payments to Merritt without GAIC's consent. Dennis and Richard Capolino have confirmed in depositions and other admissions that the outstanding balances claimed by the subcontractors were accurate, but consistently asserted that many of the claims were not due because the owners had not yet accepted subcontractors' work and paid Merritt. However, Merritt identifies no subcontractor who failed to perform the entire scope of work called for in its contract. Merritt also informed GAIC of its contention that a few of the subcontractors' claims were not subject to the bonds. Moreover, Merritt now contends that it informed GAIC that Waynesboro and Orange County, two of the owners who made claims under the performance bonds, were in default for late payment before the owners claimed Merritt was in default. However, the defendants at no time requested that GAIC defend or litigate any claims or deposit any collateral with GAIC, as provided for in the Indemnity Agreement.

GAIC specifically requested that Merritt post collateral as to several claims, but Merritt failed to do so.

### Discussion

### I. The Motion for Summary Judgment

The motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted when there is no issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. See Rule 56(c), Fed.R.Civ.P.; *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991). If, on the other hand, a reasonable finder of fact could return a verdict for the nonmoving party, there is a genuine factual dispute and summary judgment should not be granted. *See Zeevi v. Union Bank of Switzerland*, No. 89 Civ. 4637, 1992 WL 8347, *4 (S.D.N.Y. Jan. 14, 1992). "[T]he trial court's task at the summary judgment stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219 (2d Cir.1994).

While all reasonable ambiguities and inferences should be resolved against the moving party, those inferences must be supported by affirmative facts and must be based on relevant, admissible evidence. Fed.R.Civ.P. 56(e). In order to raise a material issue of fact, affidavits must be based on personal knowledge. *Harriscom Svenska, AB v. Harris Corp.*, 3 F.3d 576 (2d Cir.1993); *Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103 (S.D.N.Y.1989).

■ Indemnity agreements such as those at issue in this case are valid and enforceable

under New York law. *See International Fidelity Ins. Co. v. Spadafina*, 192 A.D.2d 637, 596 N.Y.S.2d 453, 454 (2d Dep't 1993). Where, as here, the general contractor has expressly agreed to indemnify the surety for losses arising from claims made on surety bonds, the indemnity agreement governs the relationship between the surety and the contractor. *See id.; BIB Construction Co. v. Fireman's Ins. Co.*, 214 A.D.2d 521, 523, 625 N.Y.S.2d 550, 553 (1st Dep't 1995); *General Ins. Co. v. K. Capolino Construction Corp.*, 903 F.Supp. 623, 626 (S.D.N.Y.1995).

■ Under the terms of the Indemnity Agreement, GAIC had the right to make payments and settle all claims, unless the defendants requested that GAIC litigate and posted collateral to secure the amount of a possible judgment and expenses of litigation. *Indemnity Agreement* ¶ 11. This right to make payments and settle claims is limited only by GAIC's obligation to settle claims in good faith. *See Spadafina*, 596 N.Y.S.2d at 454; *National Surety Co. v. Fulton*, 192 A.D. 645, 183 N.Y.S. 237, 238 (1st Dep't 1920). It is irrelevant whether Merritt was actually liable for the payments claimed by the subcontractors or actually defaulted on their contracts with the owners, so long as GAIC acted in good faith in making the payments and completing the performance under the construction contracts. *Spadafina*, 596 N.Y.S.2d at 454. In the absence of an indication of fraud or collusion between GAIC and the claimants, the subcontractors' and owners' claims of default invoked the Indemnification Agreement and its settlements clause. *See BIB Construction*, 625 N.Y.S.2d at 553.

The Appellate Division, Second Department, recently considered a virtually identical settlements clause in an indemnification agreement between a surety and a general contractor. *Ebasco Constructors, Inc. v. A.M.S. Constr. Co.*, 195 A.D.2d 439, 440, 599 N.Y.S.2d 866, 867 (2d Dep't 1993). In *Ebasco*, the settlements clause, like the clause here, provided that the surety had the right to settle any claim upon the bonds, unless the contractor requested that the surety litigate such a claim and deposited with the surety collateral to be used in paying any judgment and costs. *Id.* The court held that,

given the contractor's failure to deposit collateral and absent a showing of bad faith, the surety was entitled to summary judgment. *Id.; see also Banque Nationale de Paris S.A. v. Insurance Co. of North America*, 896 F.Supp. 163, 164 (S.D.N.Y.1995) (under virtually identical settlements clause, surety free to settle claims in good faith where debtor/indemnitor deposited no collateral). In *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719–720 (5th Cir.1995), the Fifth Circuit came to the same conclusion under Texas law. It held that the contractor's demand that the surety not settle the claim for which it was seeking indemnification did not preclude summary judgment in the surety's favor, because the contractor failed to post the collateral required by the settlements clause. *Id.* at 719–20.

Sureties enjoy such discretion to settle claims because of the important function they serve in the construction industry, and because the economic incentives motivating them are a sufficient safeguard against payment of invalid claims. The many parties to a typical construction contract—owners, general contractors, subcontractors and sub-subcontractors—look to sureties to provide assurance that defaults by any of the myriad other parties involved will not result in a loss to them. Courts have recognized that "as a practical matter the suppliers and small contractors on large construction projects need reasonably prompt payment for their work and materials in order for them to remain solvent and stay in business." *Schuler–Haas Electric Corp. v. Aetna Casualty & Surety Co.*, 49 A.D.2d 60, 64, 371 N.Y.S.2d 207, 210 (4th Dep't 1975), *aff'd* 40 N.Y.2d 883, 389 N.Y.S.2d 348, 357 N.E.2d 1003 (1976). As the Appellate Division, First Department, long ago stated:

The expense, delay, trouble, and risk of loss to the guaranty company is a sufficient safeguard against an unwarranted payment, and without such a stipulation as complained of here [which provided that proof of the surety's payment of a claim would be "conclusive evidence" of the fact and amount of the indemnitor's liability to the surety] guaranty companies could not safely do business anything like as cheaply

as they do, and to the evident advantage of the parties and of the general public. *National Surety*, 183 N.Y.S. at 238 (quoting *Guarantee Co. v. Pitts*, 78 Miss. 837, 30 So. 758 (1901)).

## A. Summary Judgment Will Be Granted on All Payment Bond Losses

█ In opposing summary judgment on the payment bond losses, Merritt contends that the payment bonds incorporate the subcontracts by reference, that under these subcontracts, Merritt was obligated to make payment to the subcontractors only upon the conditions of completion and acceptance of the subcontractor's work by the owner, as evidenced by the owner's final payment to Merritt, and that by paying the subcontractors before such completion and payment, GAIC became a 'volunteer' with no right to recover on the indemnity contract[4] since Merritt had no obligation on the underlying subcontract and bond.

However, while the payment bonds expressly incorporate the prime contract with the owner by reference, there is no similar language incorporating the subcontracts. As a result, the subcontracts (and any conditions precedent to payment contained in them) are not incorporated into the bonds. *See General Insurance Co. v. Merritt–Meridian Constr. Corp.*, No. 95 Civ. 5754, 1997 WL 187372, *4 (S.D.N.Y. Apr.16, 1997) (holding that similar payment bonds did not incorporate subcontracts). If the parties had clearly and unambiguously expressed an intention in the payment bond that no subcontractor should have a right to sue on the bond until some condition precedent contained in the subcontract had been met, then perhaps Merritt would have a defense. *See Schuler–Haas*, 371 N.Y.S.2d at 210. No such intention has been expressed here.

Merritt appears to contend that the terms of the subcontract should be incorporated into the bonds as a matter of law. It is true that a surety bond "attaches to the principal contract and must be construed in conjunction therewith." *Hunt v. Bankers & Shippers Ins. Co.*, 60 A.D.2d 781, 783, 400 N.Y.S.2d 645, 647 (4th Dep't 1977) (claimant's failure to strictly perform did not relieve surety of liability, where underlying subcontract required only substantial performance on part of claimant). However, this does not mean that a contractor, whose relationship with the surety is governed by an express indemnity contract containing provisions that permit the surety to settle in good faith, may avoid its obligation to indemnify by pointing to inconsistent provisions in a separate contract between itself and the subcontractor. Defendants' reliance on *General Insurance*, 1997 WL 187372, in support of its contentions in this regard is misplaced. In *General Insurance*, the indemnity contract did not contain a settlements clause, such as the one at issue in this case allowing the general contractor to prevent the surety from paying inappropriate claims by posting security. In the absence of such a clause, the subcontract's more stringent conditions for payment of subcontractors were not inconsistent with the indemnification agreement, which lacked

---

4. The "volunteer doctrine" provides that an insurer who pays a claim it is not obligated to pay is a "volunteer" as to that claim, and may not obtain subrogation of the claim from another party. *See National Union Fire Ins. Co. v. Ranger Ins. Co.*, 190 A.D.2d 395, 599 N.Y.S.2d 347 (4th Dep't 1993). However, in cases such as this, "where the person advancing the money to pay the debt of a third party stands in the situation of a surety ... a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect." *Koehler v. Hughes*, 148 N.Y. 507, 511, 42 N.E. 1051 (1896) (internal quotations and citations omitted). The doctrine may apply to cases in which a surety seeks indemnification in the absence of an express indemnity agreement, or where the indemnity agreement does not include a settlements clause, but in such cases, the surety can recover upon a showing that it "acted pursuant to a reasonable determination that it was liable," not proof that it was actually liable. *See Fidelity & Casualty Co. v. Finch*, 3 A.D.2d 141, 159 N.Y.S.2d 391, 396 (3d Dep't 1957) ("[R]espondent was in no sense a volunteer or an interloper [in that] it acted pursuant to a reasonable determination that it was liable. Faced with official records that indicate [a loss] it was not required to resort to litigation in order to assure its right of subrogation.... It was only required to exercise the judgment that a reasonably prudent person would have exercised under the same circumstances.") As discussed below, GAIC made a good faith, reasonable determination that it was liable for the claims made by the subcontractors and the owners. Thus, Merritt's "volunteer" argument would fail in this case.

a mechanism by which the general contractor could protect itself against inappropriate payments by the Surety. Thus, "incorporation" of the payment conditions of the subcontract and requiring the surety to prove that such conditions were met were not clearly inappropriate in *General Insurance.* Here, in contrast, if Merritt believed GAIC's settlements were inappropriate, it could simply post collateral and both its and GAIC's concerns would be addressed.

■ Moreover, even if the subcontracts' payment terms were incorporated into the bond, and thus conditioned the defendants' obligations under the indemnification agreement, those terms would not preclude summary judgment here. Merritt contends that the subcontractors' claims for payment were not due and liquidated because the "condition precedent" of owner acceptance and payment for the work had not been met.[5] However, the owner acceptance and payment provision does not create a condition precedent to payment of the subcontractors, but rather establishes a time for payment. The provision at issue here provides that final payment would not be made until thirty days after the owner accepted the subcontractor's work "as evidenced by the Owner's making final payment to the Contractor under the Prime Contract." In *Schuler–Haas,* the subcontract similarly provided that the general contractor was to make full payment to the subcontractor "when full payment for this subcontract work is received (by the general contractor) from the Owner." 371 N.Y.S.2d at 209. The Appellate Division held that this provision merely fixed the time when payment was due and did not establish a condition precedent to payment. *Id.* at 211.[6]

Accordingly, since defendants deposited no collateral and since all of the conditions for payment of the claims under the payment bonds were met, GAIC is entitled to summary judgment, unless defendants show that there is a genuine issue of fact regarding GAIC's good faith in settling the claims.

■ Conclusory allegations of bad faith are insufficient to defeat a motion for summary judgment in favor of a surety seeking to enforce an indemnification agreement. *Spadafina,* 596 N.Y.S.2d at 455. Merritt points to several actions on the part of GAIC that it claims raise a triable issue with respect to GAIC's good faith in paying the claims of subcontractors.

First, Merritt suggests that GAIC's decision to settle the claims despite Merritt's objection that it could not determine whether the claims were due until the owner made final payment evidences bad faith. A decision to proceed with claims despite possible defenses, however, is not evidence of bad faith. In *Banque Nationale,* the Hon. Lewis A. Kaplan rejected the debtor's contention that the surety's failure to assert certain defenses to the claim evinced bad faith, stating:

> There is not a scintilla of evidence, as distinct from conclusory assertions, that [the surety] acted inappropriately. Indeed, it obviously was in [the surety's] interest to press the alleged defenses for all they were worth, as the third party defendants' failure to post collateral meant that [the surety's] own funds were at risk.... There is no evidence that [the surety] failed to extract in the settlement whatever value could be derived from the alleged defenses.

896 F.Supp. at 165. Similarly, the Fifth Circuit held that a surety's settling a claim that was still being litigated by the principal was not evidence of bad faith on the part of the surety. *Transamerica,* 66 F.3d at 721. GAIC gave Merritt an opportunity to present

---

5. Defendants claim that completion of "the entire scope" of the subcontractor's work was another condition precedent of payment. However, defendants have not identified any subcontractor that failed to perform the entire scope of its contract. As a result, the only "condition precedent" as to which there is a factual dispute is owner acceptance and payment to Merritt.

6. If the payment terms of the subcontracts were read to require owner payment to Merritt as a condition precedent to payment of subcontractors, rather than establishing a time for payment, such a provision would be unenforceable. Such "pay-when-paid" provisions offend public policy, as expressed in New York Lien Law § 34. *West–Fair Electric Contractors v. Aetna Casualty & Surety Co.,* 87 N.Y.S.2d 148, 157, 638 N.Y.S.2d 394, 661 N.E.2d 967 (1995).

its objections to the claims and to post collateral if it wished GAIC to litigate the claims. Merritt chose not to do so. Moreover, to the extent that Merritt's objection that payment was not due to the subcontractors until it was paid by the owners had any legitimacy, it would only have permitted Merritt to withhold 15% of the final payment, not the entire claim or any of the prior interim payments that were due. Under these circumstances, the fact that GAIC chose to settle the claims despite Merritt's objections is not evidence of bad faith.

■ Defendants also contend that GAIC's dealings with the owners evidence bad faith. They assert that GAIC's decision to pay the owners on the performance bonds, despite GAIC's awareness that Merritt considered two of those owners to have been in default, demonstrates bad faith. In essence, they contend that good faith required GAIC to protect Merritt's interests as vigorously as it protected the interests of the owners. However, the performance bonds were expressly entered into for the benefit of the owners, not to protect Merritt. GAIC thus had no obligation under any of the agreements to which it was a party to act on Merritt's claims of default against the owners. Moreover, the owners were making complaints about Merritt's performance and its failure to pay subcontractors, and even threatening to declare Merritt in default, well before Merritt indicated that it considered the owners in default. GAIC itself was faced with numerous subcontractor claims on Merritt projects, which would reasonably lead it to conclude that the owners' claims were valid and Merritt's complaints meritless. In addition, under the assignments clause and attorney in fact clause of the indemnity agreement, GAIC had the right to settle not only claims against Merritt, but Merritt's affirmative claims against the owners as well. See *Hutton Construction Co. v. County of Rockland,* 52 F.3d 1191, 1192 (2d Cir.1995). The exercise of these rights after Merritt declined to post collateral or indemnify GAIC is not evidence of bad faith. On this record, it cannot be said that the decision to disregard Merritt's claims of default and to complete the projects under the performance bonds was evidence of bad faith.

■ Similarly, defendants complain that GAIC "interfered" with its contracts by requesting that the owners not make payments to Merritt without GAIC's consent. However, GAIC made these requests only in response to the owners' claims of default and after Merritt declined to post collateral or indemnify GAIC for claims on the bonds. Under the assignments clause and attorney in fact clause of the indemnity agreement, GAIC had the right to payments due to Merritt upon Merritt's failure to indemnify GAIC on demand or to deposit collateral security. See *Hutton Construction Co.,* 52 F.3d at 1192. The exercise of such contractual rights is not evidence of bad faith.

Accordingly, GAIC is entitled to summary judgment for indemnification for its payment bond losses.

## B. Summary Judgment Will Be Granted on the Performance Bond Losses

■ Defendants advance essentially the same arguments in opposing summary judgment on the performance bond losses as they urged on the payment bond losses. Although the performance bonds expressly incorporate the prime contracts, and thus GAIC arguably could be held to any conditions precedent to an owner declaration of default contained in those prime contracts, *see General Insurance Co. v. K. Capolino Construction Corp.,* 908 F.Supp. 197, 199–200 (S.D.N.Y.1995), Merritt has not included the prime contracts in its moving papers and makes no argument that any conditions precedent therein were not met. Thus, for the reasons set forth above, Merritt's contentions with respect to the performance bonds are also rejected.

## II. The Prejudgment Attachment Motion

In light of this grant of summary judgment in favor of GAIC, its motion for prejudgment attachment will be denied as moot. GAIC may seek execution of the judgment in accordance with Rule 69, Fed.R.Civ.P., if necessary.

## Conclusion

For the reasons set forth above, GAIC's motion for summary judgment is granted

and its motion for prejudgment attachment is dismissed as moot. All arguments not directly addressed in this opinion have been considered and deemed meritless or irrelevant. An inquest to determine GAIC's reasonable expenses will be held before the designated magistrate judge.

It is so ordered.